U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 8 2012

CLERK, U.S. DISTRICT COURT
by
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GEORGE DANIEL SMITH JR., §
§
              Petitioner, §
§
v. § No. 4:11-CV-731-A
§
RICK THALER, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
              Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, George Daniel Smith Jr., a
state prisoner currently incarcerated in Amarillo, Texas, against
Rick Thaler, Director of the Texas Department of Criminal
Justice, Correctional Institutions Division, respondent. After
having considered the pleadings, state court records, and relief
sought by petitioner, the court has concluded that the petition
should be denied.

### I.  Factual and Procedural History

Following a two-day crime spree in 2006, during which
petitioner robbed five different individuals, he was charged by
separate indictment with three counts of aggravated robbery with

a deadly weapon and two counts of robbery by threats in Tarrant

County, Texas.   (01State Habeas R. at 60; 02State Habeas R. at

56; 03State Habeas R. at 56; 04State Habeas R. at 56; 05State

Habeas R. at 56)[1]  Each indictment also included a habitual

offender notice.   On March 27, 2007, petitioner was given and

signed written plea admonishments waiving his right to a jury

trial and agreeing to enter open pleas of guilty to a jury to

count one in each indictment, in exchange for redesignation of

the habitual offender notices to repeat offender notices, to

which he agreed to plead true.   (1Clerk's R. at 39; 2Clerk's R.

at 38; 3Clerk's R. at 38; 4Clerk's R. at 39; 5Clerk's R. at 38)[2]

The following day, petitioner's trial on punishment commenced.

_____

[1]"01State Habeas R." refers to the record in petitioner's
state habeas application no. WR-76,117-01; "02State Habeas R."
refers to the record in petitioner's state habeas application no.
WR-76,117-02; "03State Habeas R." refers to the record in
petitioner's state habeas application no. WR-76,117-03; "04State
Habeas R." refers to the record in petitioner's state habeas
application no. WR-76,117-04; and, "05State Habeas R." refers to
the record in petitioner's state habeas application no. WR-
76,117-05.

[2]"01Clerk's R." refers to the clerk's record in trial court
cause no. 1039779D; "02Clerk's R." refers to the clerk's record
in trial court cause no. 1039856D; "03Clerk's R." refers to the
clerk's record in trial court cause no. 1040532D; "04Clerk's R."
refers to the clerk's record in trial court cause no. 1040739D;
"05Clerk's R." refers to the clerk's record in trial court cause
no. 1042250D.

The state presented the testimony of two law enforcement officers and the five victims.  (RR, vol. 3, at 16-50; RR, vol. 4, at 11-102)  The defense presented the testimony of four character witnesses.  (RR, vol. 4, at 107-60)  At the conclusion of the trial, the jury assessed petitioner's punishment at 99 years' imprisonment for each offense.  (*Id.* at 182-83)

Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused his petitions for discretionary review.  *Smith v. State*, Nos. 2-07-112-CR — 2-07-116-CR, 2008 WL 755077 (Tex. App.–Fort Worth Mar. 20, 2008); *Smith v. State*, PDR Nos. 562-08 thru 565-08 & 751-08.  Petitioner also filed five state habeas applications, one for each case, challenging his convictions and sentences, which were denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court.  (01State Habeas R. at cover; 02State Habeas R. at cover; 03State Habeas R. at cover; 04State Habeas R. at cover; 05State Habeas R. at cover)  This federal habeas petition followed.

## II.  Issues

Petitioner raises the following grounds for habeas relief:

(1)  He was denied his right to trial by an impartial

jury.

(2)   His guilty pleas were involuntary.

(3)   He was denied effective assistance of trial
       counsel.  (Pet. at 7-7(a))

### III.   Rule 5 Statement

Respondent believes that petitioner's grounds (1) and (3) are unexhausted and procedurally defaulted but that the petition is not barred by limitations or subject to the successive petition bar.  (Resp't Ans. at 4)  A court may deny a petition on the merits notwithstanding a petitioner's failure to fully exhaust his state court remedies under 28 U.S.C. § 2254(b)(1)(A),

### IV.   Discussion

#### *Legal Standard and for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. §

4

2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings.  *Hill*, 210 F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order it is an adjudication on the merits, which is entitled to this presumption.  *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472

5

(Tex. Crim. App. 1997.)

### *Impartial Jury*

Petitioner claims he was denied his right to an impartial jury because juror Tracy Baylor, who was his "drug counselor" at the American Indian Center, an in-patient substance abuse treatment facility, for a 90-day period while he was on parole, "did not correctly answer material questions during voir dire concerning whether she knew" him. (Pet'r Pet. at 7-7(a); Pet'r Mem. at 4-6) Petitioner asserts that Baylor had personal animosity against him, that her silence during voir dire was intended to conceal that information, and that her dishonesty, in and of itself, is a strong indication that she was not impartial. (Pet'r Mem. at 5)

On the second morning of trial, the following colloquy occurred:

> [Trial Counsel]: Your Honor, may we – I think we need to approach and tell you something, Your Honor.
>
> THE COURT: Okay.
>
> [Trial Counsel]: My client tells me he recognizes one of the jurors as a counselor at the American Indian Center.
>
> THE COURT: The American Indian Center?
>
> [Trial Counsel]: Yes, ma'am.

6

THE COURT:  Because they were asked, they were specifically asked if they recognized the Defendant.

[Trial Counsel]:  Sure.

THE COURT:  You want to see if we can get another panel?  Because he's not impaired, but he specifically denied knowing your client.

[Trial Counsel]:  Well, I don't think he's - do you think it would cause a problem, Your Honor?  I mean, to me, it's sort of a -

THE COURT:  Well, we can - at the very least, we probably need to make an inquiry of the juror.  Which juror is it?

[Trial Counsel]:  Tracy.  I'm sorry.  This is the first time he told me.

THE COURT:  Tracy?

[Trial Counsel]:  He doesn't know her last name.

.  .  .

THE COURT:  Tracy Baylor.

.  .  .

THE COURT:  Randy, we need Ms. Baylor out here. Ms. Baylor, the juror.  Tracy Baylor, out here, please.

What I'm going to do is ask her if she recognizes any of the parties or their attorneys and see if she has any recollection of anyone.  If it's that casual, I don't want to point her to a person.

[Trial Counsel]:  I think that's a good idea, Your Honor.

THE COURT:  Ms. Baylor, if you'd come up here, please, ma'am.  And I'm going to ask you a couple of

questions.  I need to swear you in as a witness.

VOIR DIRE EXAMINATION BY THE COURT:

Q.  I just needed to ask you briefly, ma'am, it's been brought to my attention that one of the attorneys or parties in this case thinks that they might have had some contact with you.  If you would take a look at them very closely and see if you recognize anyone at either the State's table or the defense table.

A.  Well, having seen them all yesterday –

Q.  Right.  Besides the contact yesterday, outside of this courtroom in this trial.

A.  Uh-huh.  Uh-huh.  The Defendant looks like someone that I may have known or – I don't recall him or his name at all, but he has the look of someone I may have known.

Q.  And so you're not sure whether you have known him or not?

A.  No.  I can't recall knowing him, but he does appear – his features look like someone I have seen before.  I couldn't tell you if it was someone working at a restaurant or where I may have seen him before, but he does appear familiar to me.

Q.  And would that play a role in any decision you would make in the punishment phase of this trial?

A.  No.

Q.  And do you feel confident that that would not influence you in any regard, the fact that he looks like someone you might have known?

A.  Yes.  No, I don't think it would make a difference.

(RR, vol. 4, at 5-8)

8

Petitioner's trial counsel also testified *via* affidavit in the state habeas proceedings.  (01State Habeas R. at 45) Counsel responded to these allegations as follows:

> Applicant informed me that he and Juror Baylor were possibly acquainted.  He did in fact inform counsel that he thought she was a counselor at the American Indian Center.  It was his belief that Ms. Baylor was a drug counselor who treated him when he was on parole.
>
> However the Applicant indicated that he was not sure that she had treated him.  I asked the Applicant if he thought she would be a Juror favorable or unfavorable to him.  Applicant said he "liked her" as a Juror and wanted her to remain on the jury.  After the court[']s inquiry it appeared no grounds existed for a mistrial.  Ms. Baylor said she had no real memory of him and that she would remain a fair and impartial Juror. . . .  Therefore, in light of the above cited circumstances the Applicant and I elected to not request a mistral and allow her to remain on the Jury.

(01State Habeas R. at 45-46)

The state habeas court entered the following relevant findings of fact on the issue:

> 6.   Applicant alleges that Exhibit A is evidence that he was denied an impartial jury.
>
> 7.   Applicant has not attached an Exhibit to his application or memorandum.
>
> 8.   Applicant presents no evidence to support his claim that he was denied an impartial jury.
>
> 9.   The jury venire, including Tracy Baylor, was asked during voir dire whether they knew any of the parties.

10.   Applicant did not know Tracy Baylor's last name.

11.   Tracy Baylor testified as follows:
      "The [Applicant] looks like someone that I may
      have known or - I don't recall him or his name at
      all, but he has the look of someone that I may
      have known."

12.   Tracy Baylor testified as follows:
      "I can't recall knowing [Applicant], but he does
      appear - his features look like someone working at
      a restaurant or where I may have seen him before,
      but he does appear familiar to me."

13.   Tracy Baylor denied that her familiarity with
      Applicant would "play a role in any decision [she]
      would make in the punishment phase of [the] trial"
      or that it would influence her in any regard.

14.   There is no evidence that Tracy Baylor recognized
      Applicant as a patient of American Indian Center.

15.   There is no evidence that Tracy Baylor recognized
      Applicant as someone she "knew" when the entire
      panel was asked if any of the jurors knew any of
      the parties.

16.   There is no evidence that Tracy Baylor
      intentionally withheld that Applicant looked
      familiar to h[er].

17.   Applicant told Hon. Harding that he was not sure
      whether Tracy Baylor had treated him.

18.   Applicant told Hon. Harding that he liked Tracy
      Baylor as a juror and wanted her to remain on the
      jury.

      . . .

20.   There is no evidence that Tracy Baylor's beliefs
      or opinions would prevent or substantially impair
      the performance of her duties as a juror in

10

accordance with h[er] instruction and oath.

21.   There is no evidence that Tracy Baylor was biased and prejudiced against him.

22.   There is no evidence that Applicant was denied an impartial jury.

(01State Habeas R. at 48-49) (citations to the record omitted)

Based on its findings, the state court records, and applicable state law, the state court concluded—

3.    "[T]he constitutional right to trial by an impartial jury is not violated by every error in the selection of a jury."

4.    A fundamental error is presented only where the defendant "can show he was denied a trial by a fair and impartial jury."

5.    Bias against the law exists "when a venire person's beliefs or opinions 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and oath.'"

6.    When a venire member withholds material information during voir dire, he denies the parties an opportunity to intelligently exercise their challenges and obtain an impartial jury.

7.    To be material, the information withheld must be the type of evidence that suggests the potential for bias or prejudice.

8.    "When a *partial, biased, or prejudiced juror is selected* without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answer given to him on voir dire not knowing them to be inaccurate, good grounds exist for a new trial.

11

. . .

9.  Applicant has failed to prove Tracy Baylor
    withheld material evidence during voir dire.

10. "(a)  A challenge for cause is an objection made
    to a particular juror, alleging some fact which
    renders the juror incapable or unfit to serve on
    the jury.  A challenge for cause may be made by
    either the state or the defense for any one of the
    following reasons:

        9.  That the juror has a bias or prejudice in
        favor of or against the defendant; . . ."

. . .

12. "[T]he mere fact that a juror knows, or is a
    neighbor, or an intimate acquaintance of, and on
    friendly relations with, one of the parties to a
    suit, is not sufficient basis for
    disqualification."

13. Applicant has failed to prove that Tracy Baylor
    had a bias or prejudice in favor of or against
    him.

14. Applicant has failed to prove that this jury was
    biased and prejudiced against him.

15. Applicant has failed to prove that he was denied
    his right to a fair and impartial jury.

(*Id.* at 52-53) (citations omitted) (emphasis in original)

The Sixth Amendment guarantees an impartial jury.[3]  U.S.

---

[3]To the extent petitioner's claims implicate alleged
violations of state law, such claims are not cognizable on
federal habeas review.  This court may only consider whether
petitioner's federal constitutional rights have been violated.

CONST. amend. VI; *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir.

2003).   Under federal constitutional law, a juror is biased if

his "views would prevent or substantially impair the performance

of his duties as a juror in accordance with his instructions and

his oath."   *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000)

(quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).   A

defendant may show either actual or implied juror bias.   *Solis*,

342 F.3d at 395.   "Actual bias exists when a juror fails to

answer a material question accurately because he is biased."

*United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001)

(citing and applying *McDonough Power Equip., Inc. v. Greenwood*,

464 U.S. 548, 556 (1984)).   This is shown through admission or

factual proof.   *Id*.   Juror bias may also be implied in "extreme

circumstances," as in "when the juror is employed by the

prosecuting agency, is a close relative of a participant in the

trial, or is somehow involved in the transaction that is the

subject of the trial."   *Id*.

Petitioner has failed to demonstrate that Baylor dishonestly

answered questions posed to the venire, as a whole, or to her

individually, or that she was biased or prejudiced against him.

---

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

13

Nor has he demonstrated a connection between Baylor and himself that would justify a finding of implied bias.  Bald assertions are insufficient to state a constitutional claim.  *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (mere conclusory allegations do not raise a constitutional issue in a habeas proceeding).

### *Voluntariness of Petitioner's Guilty Pleas*

Petitioner claims his guilty pleas were involuntary because he was "induced to plead guilty by certain promises made by his trial counsel, John Harding."  Petitioner asserts that it was his understanding a plea negotiation had taken place, that counsel promised him "in return for his guilty plea, he would receive at least 15 years incarceration, but no more than 20 years," and that this "erroneous advice concerning the range of punishment was a critical factor in his decision to plead guilty."  (Pet. at 7; Pet'r Mem. at 7-8)  According to petitioner, "had counsel correctly informed him about the possible range of punishment, he would have pleaded not guilty and insisted on going to trial." (Pet'r Mem. at 8)

Counsel responded to these allegations as follows:

The Applicant's allegations are simply not true. The Applicant had been offered a 25 year sentence recommendation in exchange for a plea of Guilty.  The

14

Applicant refused this offer and said "I'll have to roll the dice." I informed him that there was no real "rolling of the dice," since there were six cases of a very serious nature pending. In each case the State's proof was very persuasive if not overwhelming.

After negotiation the lead counsel for the State and I reached an agreement with the full consent of the Applicant. The State offered to waive the habitual count in exchange for a plea of guilty. It was in my opinion the best trial strategy available. The punishment range then became 15 years [instead of 25 years] to life or 99 years. The Applicant was fully informed and agreed to this strategy.

(State Habeas R. at 46)

The state habeas court entered the following relevant findings of fact on the issue:

23. Applicant presents no evidence to support his claim that Hon. Harding promised him he'd receive only 15-20 years confinement if convicted.

24. Applicant presents no evidence to support his claim that Hon. Harding advised him that there was a plea bargain negotiation that limited Applicant's possible punishment range.

25. The State waived the habitual count in exchange for Applicant's plea.

26. Applicant was admonished in accordance with article 26.13 of the Texas Code of Criminal Procedure.

27. Applicant acknowledged by his signature that his plea was an "open plea to a jury."

28. Applicant acknowledged by his signature that his open plea meant as follows:

If you plead guilty without benefit of a plea agreement, the plea proceeding is your trial. Should the Court find you guilty, *your punishment can be set anywhere within the range of punishment prescribed by law for the offense*.  If you are eligible you may receive deferred adjudication or community supervision, but there is no assurance that you will.  Once the Court has accepted your guilty plea, you cannot withdraw your plea without permission from the Court.

29.  Applicant acknowledged by his signature that the punishment range he was facing was "[l]ife or any term of not more than 99 years or less than 15 years in the Institutional Division of the Texas Department of Criminal Justice; and in addition, a fine not to exceed $10,000 may also be assessed."

30.  Applicant was admonished orally that he was facing "a potential punishment range of from 15 to 99 or life and up to a $10,000 fine."[4]

31.  Applicant confirmed on the record that he understood he was facing a possible punishment range of 15 to 99 years, or life, in prison.

32.  The evidence in the trial record confirms that Applicant understood the full range of punishment.

33.  Hon. Harding acknowledged by his signature that he "fully reviewed and explained the above and foregoing court admonishments, rights, and waivers, as well as the following jurisdiction to the Defendant."

34.  Hon. Harding acknowledged by his signature that he

---

[4]The state habeas court cites to "SuppRR" in support of findings 30, 31, 35, and 36, however the court has not located a supplemental reporter's record in the state court documents on file.

was "satisfied that the Defendant [was] legally
competent and ha[d] intelligently, knowingly, and
voluntarily waived his rights and w[ould] enter a
guilty plea understanding the consequence
thereof."

35.  Applicant agreed on the record that he signed the
admonishments and understood what he was doing
when he did so.

36.  Applicant agreed on the record that his plea was
in exchange of the State's waiver of one of the
enhancement allegations.

37.  Hon. Harding recalls that Applicant was offered a
twenty-five year plea offer.

38.  Applicant refused the twenty-five year offer
against the advice of counsel.

39.  Hon. Harding advised Applicant that the six cases
were of a very serious nature and the State's
evidence was very persuasive if not overwhelming.

40.  Hon. Harding believed that the State's waiver of
the habitual offender notice in exchange for his
plea was the best trial strategy.

41.  Hon. Harding recalls that Applicant was fully
informed and agreed to the trial strategy.

(01State Habeas R. at 50-51) (citations to the record omitted)

Based on its findings, the state court records, and

applicable state law, the state court concluded–

17.  There is a presumption of regularity with respect
to guilty pleas under Texas Code of Criminal
Procedure art. 1.15.

18.  Before accepting a guilty plea, the court must
admonish the defendant as to the consequences of

17

his plea, including determining whether the plea
is freely, voluntarily, and knowingly given.

19. Applicant was properly admonished.

20. Applicant was properly admonished regarding the
full range of punishment.

21. When a defendant complains that his plea was not
voluntary due to ineffective assistance of
counsel, "'the voluntariness of the plea depends
on (1) whether counsel's advice was within the
range of competence demanded of attorneys in
criminal cases and if not, (2) whether there is a
reasonable probability that, but for counsel's
errors, he would not have guilty and would have
insisted on going to trial.'"

22. Applicant has failed to prove that counsel
promised Applicant he would receive no more than
twenty years confinement.

23. Applicant has failed to prove that his counsel's
advice fell below the range of competence demanded
of attorneys in criminal cases.

24. Applicant has failed to prove that there is a
reasonable probability that he would not have pled
guilty and would have insisted on going to trial.

25. Applicant has failed to prove that his plea was
not voluntary due to ineffective assistance of
counsel.

26. Applicant has failed to overcome the presumption
that his plea was regular.

27. Applicant has failed to prove that his plea was
not freely, knowingly, and voluntarily given.

(01State Habeas R. at 53-54) (citations omitted)

A federal court will uphold a guilty plea challenged in a

habeas corpus proceeding if the plea was knowing, voluntary, and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A guilty plea is invalid if induced by defense counsel's unkept promises. *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989). On the other hand, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Although no reporter's record of the plea proceedings is on file with this court, counsel testified that petitioner's allegations are false. Further, petitioner acknowledged that no one had promised him anything in exchange for his pleas and that he was aware of the maximum punishment he faced for each offense as reflected in the written plea admonishments and evidenced by his signature acknowledging that he was aware of the consequences

19

of his pleas.   (1Clerk's R. at 39; 2Clerk's R. at 38; 3Clerk's R. at 38; 4Clerk's R. at 39; 5Clerk's R. at 38)   Official records, such as plea documents signed by petitioner, his counsel and the state trial judge and the state trial court's judgment(s) are entitled to the presumption of regularity and are accorded great evidentiary weight.   *Webster v. Estelle*, 505 F.2d 926, 929–30 (5th Cir. 1974).

Petitioner presented no evidence in state court that counsel promised a 15-20 year sentence or otherwise led petitioner to believe there was a prearrangement as to a sentence, so as to rebut the presumption of regularity of the official state court records pertaining to the plea proceedings.   *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).   As noted above, bald assertions are insufficient to state a constitutional claim. *Ross*, 694 F.2d at 1011-12.

### *Ineffective Assistance of Counsel*

Petitioner claims his trial counsel was ineffective by failing to request a mistrial after petitioner informed counsel Tracy Baylor "was Petitioner's former drug abuse counselor who was familiar with Petitioner, and whose prior conduct toward Petitioner showed that she would likely be prejudiced against Petitioner."   (Pet. at 7; Pet'r Mem. at 8-15)   According to

20

petitioner, he informed counsel that he did not want Baylor to be

seated on the jury under any circumstances.   (Pet'r Mem. at 10)

Counsel responded to these allegations as follows:

> My response in answer to Applicant's Ground of
> Error Number One is entirely applicable to Applicant's
> Ground of Error Number Three.   In my opinion there was
> no basis for a mistrial.

> Furthermore, the Applicant informed me that he
> actually believed the Juror [M]s. Baylor would view him
> favorably.

(01State Habeas R. at 46)

A criminal defendant has a constitutional right to the

effective assistance of counsel at trial.   U.S. CONST. amend. VI.

To prevail on an ineffective assistance claim in the context of a

guilty plea, a defendant must demonstrate that his plea was

rendered unknowing or involuntary by showing that (1) counsel's

representation fell below an objective standard of

reasonableness, and (2) there is a reasonable probability that,

but for counsel's deficient performance, he would not have

pleaded guilty and would have insisted on going to trial.   *Hill*

*v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Smith v. Estelle*, 711

F.2d 677, 682 (5th Cir. 1983); *see also Strickland v. Washington*,

466 U.S. 668, 687 (1984).   In evaluating an ineffective

assistance claim, a court must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable

professional assistance or sound trial strategy.  *Strickland*, 466

U.S. at 668, 688-89.  Judicial scrutiny of counsel's performance

must be highly deferential and every effort must be made to

eliminate the distorting effects of hindsight.  *Id.* at 689.

The state habeas court entered the following relevant

findings of fact on the issue:

42. Applicant presents no evidence that Tracy Baylor
    was biased against him.

43. Hon. Harding did not move for a mistrial because
    Tracy Baylor testified she had no real memory of
    Applicant and that she would remain a fair and
    impartial juror.

44. Hon. Harding did not object to Tracy Baylor being
    on the jury because Applicant indicated that he
    wanted her to remain on the jury.

45. Hon. Harding believed that "the jury was as
    favorable to the defense as any other jury would
    be."

46. There is no evidence that Applicant was convicted
    by a bias and partial jury.

(01State Habeas R. at 51) (citations to the record omitted)

Based on its findings, counsel's affidavit, the *Strickland*

attorney-performance standard, and applicable state law, the

state court concluded–

36. Applicant has failed to prove that Tracy Baylor
    had a bias or prejudice in favor of or against

22

Applicant.

37. Applicant has failed to prove that Tracy Baylor
    was "incapable or unfit to serve on the jury."

    . . .

39. Hon. Harding properly did not object to the
    service of Tracy Baylor on the jury because
    Applicant expressly advised that he wanted her on
    the jury.

40. Hon. Harding's decision to not move for a mistrial
    was the result of reasonable trial strategy.

41. Applicant has failed to prove that Hon. Harding's
    representation was deficient because he did not
    object or move for a mistrial once it was
    discovered that Tracy Baylor faintly recognized
    Applicant as someone she had seen before but did
    not know where.

42. Applicant has failed to prove that his trial
    counsel's representation fell below an objective
    standard of reasonableness.

43. A party fails to carry his burden to prove
    ineffective assistance of counsel where the
    probability of a different result absent the
    alleged deficient conduct sufficient to undermine
    confidence in the outcome is not established.

44. Applicant has failed to prove that a reasonable
    probability exists that a mistrial would have been
    granted had counsel moved for one o[n] the basis
    that Tracy Baylor was on the jury.

45. Applicant has failed to prove that a reasonable
    probability exists that the outcome of the
    proceeding would have been different had counsel
    objected to the service of Tracy Baylor as a
    juror.

23

46.  Applicant has failed to prove that reasonable
     probability exists that the outcome of the
     proceeding would have been different had counsel
     moved for a mistrial.

47.  Applicant has failed to show that there is a
     reasonable probability that, but for the alleged
     acts of misconduct, the result of the proceeding
     would be different.

48.  Applicant has failed to prove that he received
     ineffective assistance of counsel.

(01State Habeas R. at 55-56) (citations omitted)

As previously stated, a defendant is entitled to a trial by impartial jurors. *Solis*, 342 F.3d at 395. Because jurors are presumed to be impartial and indifferent, counsel is expected to take affirmative action if he feels that the jury deciding the defendant's fate is or will be biased. Because there is no evidence of express or implied bias on Baylor's part, counsel's failure to move for a mistrial does not support a claim for ineffective assistance of counsel.

Petitioner has failed to demonstrate that the state court's adjudication of his claims is contrary to federal law on the issues raised or unreasonable given the evidence before the state courts.

For the reasons discussed herein,

The court ORDERS petitioner's petition for a writ of habeas

24

corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED March ___28___, 2012.


_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

25